BARRY J. PORTMAN
Federal Public Defender
COLLEEN MARTIN
Assistant Federal Public Defender
555 - 12th Street, Ste. 650
Oakland, California 94607-3627
Telephone: (510) 637-3500

Counsel for Defendant POLLARD

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 07-682 SBA |
| ) | |
| Plaintiff, ) | SENTENCING MEMORANDUM |
| ) | |
| v. ) | Date: June 10, 2008 |
| ) | Time: 10:00 a.m. |
| TYRONE JOSEPH POLLARD, ) | Courtroom: Honorable Saundra Brown Armstrong |
| ) | |
| Defendant. ) | |

## INTRODUCTION

Tyrone Pollard has been indicted on one count of possession with intent to distribute cocaine base. The parties have entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) under which the parties ask this Court to sentence Mr. Pollard to 70 months incarceration based on 18 U.S.C. § 3553(a). In addition, Mr. Pollard asks that the PSR be amended to indicate that he has been in custody based on these charges since August 30, 2007. He also asks that the Court recommend to the Bureau of Prisons that he participate in the RDAP residential drug treatment program while in custody, and that the Bureau of Prisons recommend that he be designated to FCI-Lompoc so that he can remain close to his family.

## BACKGROUND

**A. Procedural Background**

Mr. Pollard was arrested on August 10, 2007, by officers of the Oakland Police Department and accused of possessing what turned out to be 29.2 grams of a mixture and substance containing cocaine base. PSR ¶ 6. The arrest occurred at a BART station when officers stopped and questioned Mr. Pollard because they knew he was on parole. The police report notes that when stopped, Mr. Pollard admitted to having narcotics. *See* PSR ¶ 6. When searched, he was found to have two "chunks" of low purity cocaine base. *Id.* The police found no weapons and no other contraband. Mr. Pollard was released that day, but on August 14, 2007, he was returned to custody on a parole violation. PSR ¶ 29. He was held at Santa Rita County Jail. Declaration of Frank Tamburello at ¶ 2 ["Tamburello Decl."]. On August 24, 2007, he was charged in Alameda County Superior Court with a violation of California Health & Safety Code § 11351.1 in *People v. Pollard*, Alameda County Superior Court Case Number 532505. *Id.* at ¶ 3. On August 30, 2007, he was paroled. PSR ¶ 28. However, he remained in custody. Tamburello Decl. at ¶¶ 2-3. On October 25, 2007, the indictment in the above-captioned case was filed, charging Mr. Pollard with a single count of violating 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii). On October 26, 2007, the federal hold was placed on Mr. Pollard. Tamburello Decl. at ¶ 2. On November 28, 2007, the charges pending against him in Alameda

County Superior Court were dismissed, *id.* at ¶ 3, and on December 13, 2007, Mr. Pollard was first brought to federal court to answer to the federal charges. PSR ¶ 4. He has been in custody continuously based on the August 10, 2007, arrest since August 14, 2007. He has not received credit toward any other sentence for the time in custody between August 30, 2007, the date he was paroled, and December 13, 2007.

The parties negotiated a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). That agreement was tendered to the Court on March 27, 2008. The Court referred the matter to the United States Probation Office. USPO Brian Casai prepared a thorough Presentence Report ["PSR"]. Following the issuance of the draft PSR, the parties discovered that the initial plea agreement contained an erroneous guideline calculation. The parties then submitted a new plea agreement to the Court, which corrected the error in the guidelines but which calls for the same sentence as contained in the first plea agreement.

The plea agreement which is now before the Court provides for the following Guidelines calculation:

| | | | |
|---|---|---|---|
| a. | Base Offense Level, USSG §2D1.1(c)(7) (more than 20 but less than 35 grams of crack cocaine) | | 26 |
| b. | Acceptance of responsibility pursuant to USSG § 3E1.1 | | -3 |
| c. | Adjusted offense level | = | 23 |

Plea Agreement ¶ 7.

At Criminal History Category V, the low-end of the resulting Guideline range is 84 months. However, the parties have agreed that under 18 U.S.C. § 3553(a), the appropriate sentence for Mr. Pollard is 70 months.[1] Plea Agreement ¶ 8. The Probation Office agrees that a 70 month sentence is appropriate in this case. Sentencing Recommendation at 1.

---

[1] The initial plea agreement erroneously provided for a base offense level of 24 and, taking into account acceptance of responsibility, a final offense level of 21. The parties did not come to an agreement about Mr. Pollard's Criminal History Category. The PSR calculates Mr. Pollard's Criminal History at Category V. ¶ 31. The initial agreement called for a sentence at the low end of the resulting guidelines range, which, at offense level 21, Category V, is 70 months.

**B. Mr. Pollard's Background**

Mr. Pollard started out life at a disadvantage. As USPO Casai noted in summary:

> Mr. Pollard advised of a turbulent childhood. His mother was a drug addict and failed to provide him with direction and general parenting, reportedly smoking crack cocaine in front of the defendant on several occasions during his youth. The defendant rarely saw his father, was sometimes cared for by his paternal grandmother, and often left to fend for himself. Mr. Pollard advised that, as the eldest child in his family, he often took on the responsibility of watching over his younger siblings, in hopes of shielding him from the unhealthy experiences he had know under the care of his mother and on his own.

Sentencing Recommendation at p.1.

Both of Mr. Pollard's parents were drug addicts: his father was addicted to heroin and crack cocaine, and his mother, who was 17 or 18 when he was born, was a crack addict. PSR ¶¶ 43-44. The PSR describes Mr. Pollard's turbulent upbringing. Mr. Pollard's father, who is now incarcerated at Folsom State Prison on drug charges, was mostly absent during his youth. PSR ¶ 44. Mr. Pollard's mother often smoked crack around her children while Mr. Pollard was growing up. *Id.* He was shuffled between his mother and his paternal grandmother as he was growing up. *Id.* His mother had four more children, each with a different father. PSR ¶ 43. His family was poverty stricken, and was forced to live for a while in a condemned apartment. PSR ¶ 44. When Mr. Pollard was about ten years old, they moved out of the apartment and into a homeless shelter. *Id.* He had to leave school because of this change and recalls it as a disruptive and difficult time *Id.*

When Mr. Pollard was about fourteen years old, his mother was shot. *Id.* Though he was just a child himself, as the eldest in the family, Mr. Pollard took on the responsibility of caring for his younger half-brothers and sisters, whom he hoped to protect from the difficult experiences he had had. *Id.*

Mr. Pollard is a talented athlete. Sports were very important to him, but because of his chaotic and impoverished family life, he was never able to play organized sports such as Little League baseball and the like, and felt he never got the chance to excel. PSR ¶ 44. He did attend Merritt College, where he played basketball and hoped to transfer to a larger institution where he could continue to play sports. PSR ¶ 51.

Mr. Pollard has two children: Taylor Pollard, who is seven years old, and Tyrone Pollard III, who is two. PSR ¶¶ 45-46. Mr. Pollard is an active and engaged father who speaks proudly of his daughter Taylor's excellent performance in school.

## DISCUSSION

**I.     The Supreme Court has Made Clear that District Courts Have Both the Authority and the Responsibility to Exercise Their Judgment and Discretion in Arriving at the Appropriate Sentence.**

The Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005), *Kimbrough v. United States*, 128 S.Ct. 558 (2007), and *Gall v. United States*, 128 S.Ct. 586 (2007), have dramatically altered the district court's role in sentencing. Taken together, these cases make it clear that district court judges now have the ability, as well as the duty, to exercise their judgment and discretion in arriving at a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." Section 3553(a)(2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). Moreover, district courts must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," the kinds of sentences available, the policies of the Sentencing Commission, the guidelines, the need to avoid unwarranted sentence disparities, and the need to provide restitution to any victims. 18 U.S.C. §3553(a)(1) - (7); *see also*, *e.g., United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (describing the "overarching statutory charge for a district court").

Of course, even before the Supreme Court's decision in *Booker* rendered the Sentencing

Guidelines advisory, district courts had some authority to depart from the Guidelines. *See generally* USSG § 5K (enumerating grounds for departure). But this authority was far from absolute. Certain factors were forbidden as grounds for departures, *see* USSG § 5K2.0(d); others were strongly discouraged, *see e.g.*, USSG § 5K2.0(a)(4). In 2003, Congress instituted a de novo standard of review for downward departures, thereby inviting the circuit courts to second-guess any exercise of discretion. *See* 18 U.S.C § 3742(e) (2000 ed. & Supp. IV).

In *Booker*, the Supreme Court held that the mandatory nature of the Sentencing Reform Act of 1984 violated the Sixth Amendment right to a jury trial. *See Booker*, 125 S.Ct. at 756. "To remedy the constitutional infirmity, the Court severed the mandatory portions of the Act, rendering its sentencing provisions, including the Sentencing Guidelines, effectively advisory." *United States v. Ameline*, 409 F.3d 1073, 1074 (9th Cir. 2005) (en banc). The Guidelines, "formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough*, 128 S.Ct. at 564. While "district courts still 'must consult [the] Guidelines and take them into account when sentencing,'" *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) (quoting *Booker*, 125 S.Ct. at 767), the district courts "may not presume that the Guidelines range is reasonable," *Gall*, 128 S.Ct. at 596-97 (citing *Rita v. United States*, 127 S.Ct. 2456 (2007)). And, as the Court's subsequent decisions in *Gall* and *Kimbrough* demonstrate, *Booker*'s consultation requirement is not intended to limit the district court's sentencing discretion.

In *Gall*, the Supreme Court held that appellate courts cannot impose a requirement that "a sentence that constitutes a substantial variance from the Guidelines be justified by extraordinary circumstances." *Gall*, 128 S.Ct. at 591. The Court likewise rejected "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence," *id.* at 595, and held that it is within the district court's discretion to arrive at an appropriate sentence, "whether inside, just outside, or significantly outside the Guidelines range," *id.* at 591. The Court explained:

> [B]oth the exceptional circumstances requirement and the rigid mathematical formulation

reflect a practice – common among courts that have adopted "proportional review" – of applying a heightened standard of review to sentences outside the Guidelines range. This is inconsistent with the rule that the abuse-of-discretion standard of review applies to appellate review of all sentencing decisions – whether inside or outside the Guidelines range.

*Id.* at 596.

The Court emphasized the importance of deferring to the judgment of the sentencing courts, explaining:

The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record. "The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court."

*Id.* at 597-98 (quoting *Rita*, 127 S.Ct. at 2469). Of course, district courts possessed these attributes long before *Booker* was decided. Now, however, the district courts' experience and judgment take on added importance, because so many more sentencing options are available. In *Gall*, for example, the district court rejected a Guidelines range of 30 to 37 months in favor of probation. The Supreme Court acknowledged that "[i]f the Guidelines were still mandatory, and assuming the facts did not justify a Guidelines-based downward departure, this would provide a sufficient basis for setting aside Gall's sentence because the Guidelines state that probation alone is not an appropriate sentence for comparable offenses." *Gall*, 128 S.Ct. at 601-02. But, the Court went on to explain as it upheld a sentence of probation, "the Guidelines are not mandatory, and thus the 'range of choice dictated by the facts of the case' is significantly broadened." *Id.* at 602.

The Supreme Court has directed that a district court "may not presume that the Guidelines range is reasonable." *Gall*, 128 S.Ct. at 597. Further, in *Carty*, the Ninth Circuit declined to "adopt an appellate 'presumption' of reasonableness for sentences imposed within the Guidelines range." 520 F.3d at 988.

Sentencing proceedings must begin with a correct calculation of the applicable Guidelines range. *Carty*, 520 F.3d at 991. However, they do not end there. Instead, the inquiry can turn to

whether "the case at hand falls outside the 'heartland'" of cases, such that a downward departure is appropriate. *Rita*, 127 S.Ct. at 2465; *see also Carty*, 520 F.3d at 991, n. 6 (quoting *Rita*). The inquiry can also turn to whether "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations," or to whether "the case warrants a different sentence regardless." *Rita*, 127 S.Ct. at 2465; *see also Carty*, 520 F.3d at 991, n. 6 (quoting *Rita*). Once these inquiries are posed, the district court "should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties." *Carty*, 520 F.3d at 991. As *Carty* directed, the district court should

> consider the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and the sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims.

520 F.3d at 991, citing 18 U.S.C. § 3553(a)(1)-(7); *Gall*, 128 S.Ct. at 596-97 n. 6.

In considering these factors, the district court "may not presume that the Guidelines range is reasonable." *Carty*, 520 F.3d at 991, citing *Rita*, 127 S.Ct. at 2465 (citing *Booker*, 543 U.S. at 259-60); *Gall*, 128 S.Ct. at 596-97. Further, while the Guidelines are to be accorded "respectful[] consideration," no factor, including the Guidelines, "should be given more or less weight" than any other factor. *Id.* Moreover, the sentence must be based on "an individualized determination based on the facts." *Id.*

**A. The Circumstances of this Case and Mr. Pollard's History and Characteristics Make a 70-Month Sentence Appropriate.**

In Mr. Pollard's case, the parties agree that the Sentencing Guidelines provide for a Guideline range of 84 to 105 months. In his plea agreement, Mr. Pollard agreed not to request a downward departure from that Guideline Range. *See* Plea Agreement ¶ 7. However, the parties further agree that the appropriate sentence in this case under the Guidelines *and* the factors set forth in § 3553(a) is 70 months incarceration. Plea Agreement ¶ 8.

Several § 3553(a) factors warrant a 70-month sentence in this case. First, Mr. Pollard's history and characteristics support such a sentence. Mr. Pollard has, as the Probation Office has identified,

suffered a very turbulent and difficult youth. *See* PSR ¶¶ 43-44; Sentencing Recommendation at 2. While the lack of youthful guidance is not a factor the Guidelines take into account, *see* USSG 5H1.12, the Court must, under § 3553(a), take into account the history and characteristics of the defendant. *See, e.g., Gall*, 128 S. Ct. at 596-97, n.6. Mr. Pollard's history and characteristics include the fact that he is the child of two drug-addicted parents, both of whom were essentially absent during his youth. They did not provide him with parenting or guidance, and instead, left him in an unsafe and chaotic environment. PSR ¶¶ 43-44. Not only was Mr. Pollard forced to take care of himself while growing up, at a young age, he took on the responsibility of caring for his younger siblings as much as possible. *Id.* His schooling suffered, and he was unable to pursue his athletic goals. This chaotic and difficult upbringing is a factor the Court may consider in arriving at a sentence that is "sufficient, but not greater than necessary" to achieve the important sentencing goals set forth in 18 U.S.C. § 3553(a)(2).

Secondly, the nature of the offense is possession of crack cocaine, which is subject to much greater punishment than powder cocaine. In *Kimbrough*, the Supreme Court found that "the crack/powder disparity produces disproportionately harsh sanctions, i.e, sentences for crack cocaine offenses 'greater than necessary' in light of the purposes of sentencing set forth in § 3553(a)." As the Ninth Circuit has recently noted, "both the United States Sentencing Commission and the Supreme Court criticized the 100-to-1 sentencing disparity between offenses involving crack and powder." *United States v. Medina Casteneda*, 511 F.3d 1246, 148 (9th Cir. 2008), citing U.S. Sentencing Comm'n, Report to Congress: Cocaine and Federal Sentencing Policy 8 (May 2007), available at http://www.ussc.gov/r–congress/cocaine2007.pdf; *Kimbrough*, 128 S.Ct. at 569. In *Medina Casteneda*, the district court rejected the defendant's request that it consider the powder/crack disparity in determining his sentence. *Medina Casteneda,* 511 F.3d at 1148-49. The Ninth Circuit remanded so that the district court reconsider the defendant's sentence "in light of the *Kimbrough* decision and to determine whether the disparity between crack and powder cocaine produced a sentence 'greater than necessary' under § 3553(a). *Id.* at 1249.

Thus, *Kimbrough* and *Medina Casteneda* confirm that the crack/powder disparity is a relevant factor to consider under § 3553(a). In *United States v. Barsumyan*, 517 F.3d 1154, 1159 (9th Cir. 2008), the Ninth Circuit found that "[i]f the operation of one particular guideline has inappropriately distorted the final range calculation, that is one factor which the district court may take into account in determining the final sentence." Here, the crack cocaine guideline, as compared to the applicable powder cocaine guidelines, can be seen as distorting the final calculation. Thus, were Mr. Pollard to be sentenced under the 1:1 ratio recommended by the Sentencing Commission, the base offense level would be 14, based on at least 25 but less than 50 grams of cocaine. *See* U.S.S.G. § 2D1.1(c)(13). Mr. Pollard is not asking for such a sentence, but is instead requesting a sentence that would be well above what he would face based on powder cocaine. A sentence of 70 months, based in part on the powder/crack disparity, would ensure that the sentence were based on the nature of the offense and would adequately deter criminal conduct. *See, e.g.,* Sentencing Recommendation at 2 (concluding 70-month sentence agreed to by the parties "will serve as sufficient deterrence in this case.").

In *Barsumyan*, the Ninth Circuit found that the district court must engage in a "holistic sentencing determination." *Barsumyan*, 517 F.3d at 1159. Taking into account all the relevant factors in a holistic manner, a sentence of 70 months in custody as provided for in the plea agreement and as recommended by the Probation Office is appropriate here.

**II.   Mr. Pollard Asks that the PSR be Amended to Indicate Mr. Pollard has Been In Custody on These Charges Since August 30, 2007.**

The PSR indicates that Mr. Pollard has been in federal custody since December 13, 2007. Mr. Pollard respectfully asks that the PSR be amended to indicate that he has been in custody on these charges since August 14, 2007, and that he has not received credit toward any other sentence for the time between August 30, 2007, and December 13, 2007.[2] If the PSR is so amended, the Bureau of

---

[2] Mr. Pollard believes that the Probation Office has done an excellent job on his PSR. However, while the report indicates there are no unresolved objections to the PSR, Mr. Pollard

Prisons will properly give him pretrial custody credits for that time.

As set forth *supra*, Mr. Pollard initially went into custody based on his August 10, 2007, arrest on August 14, 2007 as a parole violator. On August 22, 2007, state charges were filed against him. Tamburello Decl. at ¶ 3. He was paroled on August 30, 2007, while those charges were pending. PSR ¶ 28. Instead of being released, however, he remained in custody on the state charges. Tamburello Decl. at ¶¶ 2-3. Those charges were dismissed on November 28, 2007. Tamberllo Decl. at ¶ 3. Because a federal detainer had been lodged based on the October 25, 2007, federal indictment, Mr. Pollard remained in state custody until his initial appearance on the indictment on December 13, 2007.

Because the state charges against him were dismissed on November 28, 2007, Mr. Pollard has not received credit for any of the time spent in custody from August 30, 2007 through December 13, 2007. Under 18 U.S.C. § 3585(b)(1), Mr. Pollard is entitled to credit toward his federal sentence for "any time spent in official detention prior to the date the sentence commences ... that has not been credited against any other sentence" when that time in official detention results from "the offense for which the sentence was imposed." *See also* BOP Policy Statement 5880.28 (1997) ("Time spent in non-federal presentence custody from the date of the federal offense that does not overlap any other authorized prior custody time credits, to the date the first sentence begins to run, ... is qualified non-federal presentence time.").

Mr. Pollard therefore requests that the PSR indicate that he was in state custody on these charges for the period between August 30, 2007 and December 13, 2007, so that he may properly receive all the pretrial credits which he is due.

**III.    Mr. Pollard Requests That the Court Recommend to the Bureau of Prisons That He Participate in Drug Treatment and That He Be Designated to a Facility That Will Allow His Family to Visit Him.**

Not surprisingly, given his parents' addiction problems and the genetic and intergenerational

---

raised this issue in his May 15, 2008 response to the draft PSR and again in a letter dated May 29, 2008.

nature of addiction, Mr. Pollard too suffers from a drug problem. PSR ¶50. He has smoked marijuana daily since he was 13 years old. *Id.* He is eager to receive drug treatment so that when he is released, he can live in the community without substance abuse. *Id.* His goal upon his release is to obtain a commercial truck driver's license so that he can obtain good, steady employment. *Id.* He recognizes that he cannot achieve this goal without being drug-free. *Id.* Mr. Pollard therefore respectfully asks that the Court recommend to the Bureau of Prisons that he attend the 500-hour RDAP drug treatment program while in custody. USPO Casai supports this request. Sentencing Recommendation at 2.

      Mr. Pollard further requests that this Court recommend to the Bureau of Prisons that he be designated to the correctional institution in Lompoc, California. While recognizing that the Bureau of Prisons will designate Mr. Pollard based on a variety of factors, he asks for this recommendation so that he can remain close to his family. Mr. Pollard's entire family lives in the East Bay, and because of their limited financial means, would find it very difficult to visit him if he were further away. Maintaining family ties is an important factor in reducing recidivism and improving behavior while in custody. Scholars have noted "a strong and consistently positive relationship between parole success and the maintenance of strong family ties while in prison. The reliability of this research is substantiated by the results of other research undertakings ...The positive relationship between strength of social ties and success on parole has held up for 45 years of releases across very diverse offender populations and in different localities." Jim Mustin, *The Family: A Critical Factor for Corrections*, (Family & Corrections Network, 1987), citing N. Holt & D. Miller, *Explorations in Inmate-Family Relationships*, (Research Division, California Department of Corrections, 1972) p 61. *See also, e.g.,* Theresa A. Clark*, The Relationship between Inmate Behavior and Visitation: Implications for African American Families* (chapter 4 of Othello Harris and R. Robin Miller, eds., *Impacts of Incarceration on the African American Family* (Transaction Publ. 2003), citing, *inter alia,* L.A. Bennett, *What has Happened to Prison Visiting*: *Current Use of a Rehabilitative Tool*, (US Dept of Justice NIJ Pub., 1987) (abstract found at

*U.S. v. Pollard*, CR 07-682 SBA
Sentencing Memo.                                                             - 11 -

http://www.ncjrs.gov/App/Publications/abstract.aspx?ID=116840) (finding that studies "indicate that prisoners who are visited by their families and friends during incarceration make better parole and postinstitutional adjustments").[3]

In order to maintain his family ties, which can, in turn, impact his successful return to the community upon his release, Mr. Pollard respectfully asks that the Court recommend to the Bureau of Prisons that he be designated to FCI-Lompoc or, in the alternative, another institution in California which will enable him to remain close to his family.

**CONCLUSION**

For all the reasons set forth above, Mr. Pollard asks this Court to sentence him pursuant to 18 U.S.C. § 3553(a) in accordance with the plea agreement to a term of 70 months. He further asks that the PSR be amended to properly reflect all his pretrial custody time. He finally asks that the Court recommend to the Bureau of Prisons that he receive the RDAP drug treatment program while in custody, and that he be designated to FCI-Lompoc so that he may more readily have family visits.

Respectfully submitted,

Dated: 6-3-08                                    /S/

COLLEEN MARTIN
Attorney for Defendant Pollard

---

[3]Relevant portions from these articles are attached in Appendix A-1 through A-3.