# APPENDIX   A-2

| Family & Corrections Network | |
|---|---|
| Reading Room | |

## The Family: A Critical Factor for Corrections

by Jim Mustin
Executive Director
Family and Corrections Network

*(This is a November 1, 1987 revision of the article originally appearing in the Proceedings of the 29th Annual Southern Conference on Corrections. Used with permission.)*

Texts on corrections give few references to the offender's family. Until 1983, no periodical was published specifically for those working with families involved in correctional systems (FCN Working Papers, 1983). Yet, there is substantial evidence that the family is a critical factor in the correctional process. Studies of prison release success rates, offender behavior in institutions, and treatment of juvenile offenders show the offender's family is a critical factor for the full spectrum of offenders from juvenile status offenders to maximum-security felons.

A seminal study, Explorations in Inmate - Family Relationships (Holt, Miller, 1972) examined prisoner-family relationships in the California Department of Corrections and reviewed previous studies of the impact of family ties on parole release success.

**"The central finding of this research is the discovery of a strong and consistently positive relationship between parole success and the maintenance of strong family ties while in prison. The reliability of this research is substantiated by the results of other research undertakings ...The positive relationship between strength of social ties and success on parole has held up for 45 years of releases across very diverse offender populations and in different localities. It is doubtful if there is any other research finding in the field of corrections which can approximate this record"** (Holt, Miller, 1972: 61).

More recent research by the State of New York Department of Correctional Services indicates family visits for prisoners are a positive influence on offender behavior both in prison (Grossman, 1981) and upon release (Macdonald, 1980). A February 1985 Massachusetts Department of Corrections study found "... correctional programs operating in the Massachusetts system which are geared to maintain, to establish or re-establish general societal links such as family, economic, political, and social roles may be associated with a subsequent reduction in recidivism." (LeClair, 1985) A Sacramento, California Juvenile Court study has shown diversionary family therapy programs more promising than probation (Baron, Feeny and Thornton, 1973). A study at Eugene, Oregon Juvenile Court found: "The statistical evidence suggests that family

http://www.fcnetwork.org/reading/mustin.html

counseling has a strong impact on reducing the number of children under court supervision who repeat offenses." The authors of the Eugene, Oregon study conclude that "...juvenile court intervention which focuses on the family is more effective than interventions that focus primarily on the child" (McPherson, McDonald and Ryer, 1983: 32). Studies by the National Resource Center on Family Based Services have shown intensive, family-based services to be a cost-effective alternative to removing children from troubled homes (Hutchison, 1982) (Prevention Report, 1982). A study at a boy's state correctional school in a southeastern state found parental visiting had "a direct beneficial effect" upon the behavior of the boys at the institution (Borgman, 1985).

Not only has the family been shown to be an effective resource for dealing with a variety of offenders, but the family is often a key factor in two behavior patterns associated with crime: violence and chemical dependency. Contrary to the heroin addict's lone wolf stereotype, "...studies have documented the frequent contact that exists between the addict and his parents. Even in his late twenties or thirties he either lives at home or sees his parents regularly" (Stanton, 1977: 7). There are indications that family oriented treatment of drug addiction is more effective than individual focused methods (Stanton, 1977: 8-9). Alcoholism, too, is a family problem: ...pathological drinking becomes integrated into the family system and leads to predictable compulsive behavior, both in individual family members and in the interaction between them" (Wegscheider, 1981: 29). Studies have shown that about 50% of alcoholics are children of alcoholics, that children of alcoholics have significantly higher rates of foster care placement, juvenile delinquency and suicide attempts and that 60% of non-alcoholic wives of alcoholics had alcoholic fathers (Wegscheider, 1981: 29-30). Like chemical dependency, violence is, in many ways, a family problem. Gelles (1984) reports ...at least 7 to 8 million American households are the scenes of one form of abusive family violence each year" and that "residents of the United States are more likely to be murdered in their homes by members of their families than anywhere else or by anyone else in our society." A U. S. Department of Justice report links violent behavior to a history of abuse. "Violent behavior and physical and psychological abnormalities often appear among children and adolescents subjected to extreme abuse and violence in their families." (Report to the Nation on Crime and Justice, 1984)

The same U. S. Department of Justice Report states that a high number of offenders come from unstable homes, that prison inmates are likely to have relatives that served time and that most inmates have dependent children. "Despite the high proportion of unmarried inmates, more than half had children, almost all of them under age 18. More than a third had three or more children." (Report to the Nation on Crime and Justice, 1984)

This data both confirms the common sense awareness that families influence behavior and points to a new ordering of priorities for corrections. If contact between the offender and the family is a key to success upon release, the prison system should maximize this contact - not frustrate it, as is usually the case. Correctional caseworkers

http://www.fcnetwork.org/reading/mustin.html

should work with the family in mind, not just the individual offender. Correctional staff should be trained to relate to the families of offenders as a precious resource, at times difficult to work with, but nonetheless invaluable. The arrest/incarceration/release cycle should be evaluated for its impact on the offender's family (Fishman and Alissi, 1979). Procedures destructive to family relationships should be identified and changed to reduce or eliminate damage, ("Policy Recommendations Families of Adult Offenders," 1986).

This proposed reordering of priorities for corrections would require substantial investment in policy revision and retraining of staff, but small investment in bricks and mortar or additional staff. Families of offenders constitute an almost unlimited free resource available to corrections. Programs using volunteer staff administered by non-profit community agencies will often be more effective with families than paid correctional staff (Fishman, Alissi, 1979:17). Staff training priorities would need revision and some additional training would be needed, but no special certifications are required to working more effectively with families. To work more effectively with families, corrections is faced not with a problem of fundraising but a challenge to management: to set goals and to marshal available resources to meet them.

The resources for working with families in correctional systems include the existing knowledge base, various programs in the United States and other countries, and the families of offenders themselves. The knowledge base for working with families has not always been easily available to corrections professionals. Social work, a profession with extensive skills for working with families, has tended to shun the correctional client, but this trend may be changing (Roberts, 1983). Family systems (Bowen, 1978) (Satir, 1967) (Staunton, 1977) has recently developed a body of theory and practice with tremendous implications for corrections. More than providing techniques for family counseling, family systems offers a new way of looking at crime and our response to crime.

Family oriented research in corrections has been occasional rather than ongoing. In addition to the studies cited earlier, several useful documents are available. The American Correctional Association (1981) published a study of the Mexican Penal Colony at Islas Marias where long term prisoners and their families live together in a community setting. Fishman and Cassin's (1981) Services to Families of Offenders gives valuable, but now dated, review of the literature relevant to adult prisoners and their families.

The Directory of Programs Serving Families of Adult Offenders (N IC, June 1985) identified 109 programs in the United States and 21 in Canada that offer specific services to families of offenders or to those working with the offender's family. . Direct services to families included information on the criminal justice system and sources of assistance, emotional support, counseling, child care, parenting skills classes, legal services, hospitality centers, temporary shelter, transportation and political lobbying. Services to those working with families of offenders included information, staff training, consultation, and mediation of disputes between prison management and visitors.

http://www.fcnetwork.org/reading/mustin.html

Family and Corrections Network (FCN), publishes a quarterly, FCN Working Papers, with information for those' working with families involved in correctional systems. In May 1986 FCN sponsored the 1st National Leadership Conference on Families of Adult Offenders. Soon to be published by the National Institute of Corrections, the proceedings of the conference, "Policy Recommendations on Families of Adult Offenders" gives a consensus of current thinking in the field. FCN also offers technical assistance and training service for those interested in developing family programs for corrections.

Perhaps the most important resource for working with families involved in correctional systems is the families themselves. Offering irreplaceable service as natural support systems for offenders, these families are the true experts on themselves. To become informed on the needs and characteristics of these families, one should spend time with them, listening and observing with the care and objectivity that comes from genuine respect. Families involved in correctional systems tend to be hypersensitive to anything that smacks of manipulation or coercion, and suspicious of the symbols of authority (Comeau, 1983). When treated with respect, these families usually become receptive.

In addition to offering service as natural support systems and information sources, the families of offenders can potentially fill a great gap in the correctional system - the lack of a political constituency. Corrections needs an informed group of citizens who care about the day-to-day conditions of both staff and offenders and who will take these concerns to elected officials. Families of offenders can become that constituency. This process has already begun in Texas and California where political interest groups of families and friends of offenders have influenced legislative and executive processes impacting corrections. While some corrections professionals may feel threatened by the growing political influence of families of offenders, the possibility of a cooperative and productive alliance has already been demonstrated in California.

Corrections has traditionally served as the state's instrument for delivery of punishment and services to individual offenders. But crime is more than a conflict between the individual and the state; crime is a problem of broken human relationships (Epps, 1982) (Zehr, 1980). The family is the fulcrum of human relationships. Corrections which focuses only on the individual is not capable of dealing effectively with either human relationships or the family. Ignoring how crime and our response to crime effects victims, offenders and their families, individual-focused corrections offers endless variations on the iron fist of punishment, clothed in fashionable velvet gloves of rehabilitation. The family offers a new look at corrections and a resource for constructive change.

**References**
The American (Correctional Association, The Mexican Penal Colony at Islas Marias. ACA: College Park, MD, 1981.

Baron, R., Feeny, F., and Thornton, W., "Preventing Delinquency Through Diversion:

http://www.fcnetwork.org/reading/mustin.html

...

The Sacramento 601 Diversion Project," Federal Probation 37. (1973) p.13-18.

Borgman, R. "The Influence of Family Visiting Upon Boy's Behavior in a Juvenile Correctional Institution." Child Welfare, Vol. LXIV, I/6, Nov./Dec. 1985.

Bowen, M., Family Therapy in Clinical Practice, Jason Aronson, 1978.

Comeau, K., "Prison Visitors: Obstacles to Cooperation," FCN Working Papers #1, Nov. 1983, 54-56.

Directory of Programs Serving Families of Adult Offenders, June 1985. National Institute of Corrections Information Center, 1790 30th Street, Suite 130, Boulder, CO 8031, (303) 444-1101.

Epps, E., Law Breaking and Peacemaking, Argenta Friends Press, Argenta, B.C., Canada, VOG 1BO, 1982.

Fishman, S. and Alissi, A., "Strengthening Families as Natural Support Systems for Offenders, "Federal Probation, Sept. 1979, 16-21.

Fishman, S. and Cassin, C., Services to Families of Offenders, National Institute of Corrections, Washington, DC, 1981.

FCN Working Papers, ed. James W. Mustin, P. 0. Box 2103, Waynesboro, VA 22980, Office: (703) 943-3141, Home (804) 977-1028, issue #1, Nov. 1983.

Gelles, R., "How Families with Violent Members Can be Helped." Division of University Relations, 22 Davis Hall, University of Rhode Island, Kingston, RI 02881. Updateds paper distributed in 1984 by National Council on Family Relations, Minneapolis, MN.

Grossman, J., "The Family Reunion Program's Impact on Discipline." Program Planning, Research and Evaluation, State of New York Department of Correctional Services, State Office Building Campus, Albany, NY 12226, May 1980.

Holt, N., and Miller, D., Explorations in Inmate-Family Relationships, Research Division, Department of Corrections, State of California, Jan. 1972, 61.

Hutchison, J., "A Comparative Analysis of the Costs of Substitute Care and Family Based Services." Monograph 2, July 1982. National Resource Center on Family Based Services, School of Social Work, University of Iowa Oakdale Campus, Oakdale, IA 52319.

LeClair, D., "The Effect of Community Reintegration on Rates of Recidivism: A Statistical Overview of Data for the Years 1971 Through 1982," February, 1985. Massachusetts Department of Correction.

MacDonald, D., "Follow-up Survey of Post-release Criminal Behavior of Participants in Family Reunion Program." Program Planning, Research and Evaluation, State of New York Department of Correctional Services, State Office Building Campus, Albany, NY 12226, May 1980.

McPherson, L., McDonald, L. and Ryer, C., "Intensive Counseling with Families of Juvenile Offenders." Juvenile and Family Court Journal, Feb. 1983, 32-33.

"Policy Recommendations on Families of Adult Offenders," to be published by National Institute of Corrections Information Center in late 1986.

Prevention Report, "Prevention at What Cost?", Summer 1982, National Resource Center on Family Based Services, The University of Iowa, Oakdale, IA 52319.

Report to the Nation on Crime and Justice, U. S. Department of Justice, 1984. NCJRS, P.O. Box 6000, Rockville, MD 20850, 22.

Roberts, A., ed., Social Work in Juvenile and Criminal Justice Settings, Charles C. Thomas, Pub., 1983.

Satir, V. Conjoint Family Therapy, rev. ed. Science and Behavior Books, 1967.

Staunton, D., Drug Misuse and the Family. Philadelphia Child Guidance Clinic, Two Children's Center, 34th St. and Civic Center Blvd., Philadelphia, PA 10104, 1977, 7.

Wegscheider, S., Another Chance. Science and Behavior Books, 1981, 29-30.

Zehr, H., Mediating the Victim-Offender Conflict. Mennonite Central Committee, U.S., Offender Ministries Program, Akron, PA 17501, 1980.

http://www.fcnetwork.org/reading/mustin.html